Filed 12/23/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| LAURANCE ILOFF,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>CYNTHIA LAPAILLE et al.,<br><br>        Defendants and Respondents. | A163504<br><br>(Humboldt County<br>Super. Ct. No. CV2000529) |

Plaintiff Laurance Iloff[1] filed wage claims with the Division of Labor Standards Enforcement (DLSE) against defendants Bridgeville Properties, Inc. (BPI) and its officer Cynthia LaPaille for unpaid wages in violation of the Labor Code.  After Iloff received a favorable order from the Labor Commissioner, defendants appealed to the superior court.  Following a de novo trial on the wage claims, the court found Iloff was entitled to unpaid wages and certain penalties but rejected his claims under California's Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq.) (UCL), refused to impose personal liability on LaPaille, and declined to award other penalties.

Iloff appealed, arguing the trial court (1) miscalculated the statute of limitations when awarding unpaid wages; (2) erred in declining to impose

---

[1] This appeal was previously consolidated with an appeal filed by Iloff's wife Elsie Seviour-Iloff.  (*Seviour-Iloff v. LaPaille* (Aug. 19, 2021, A163503).)  The California Supreme Court severed the appeals on November 30, 2022.  Case No. A163503 was remanded to this court, and we issued a remittitur in that appeal on December 6, 2022.

personal liability on LaPaille; (3) abused its discretion in denying his UCL claims; (4) erred in declining to award liquidated damages under Labor Code[2] section 1194.2; (5) erred in denying Iloff's request for administrative penalties under section 248.5; and (6) miscalculated the waiting time penalties under section 203.

We issued an opinion in the appeal. (*Seviour-Iloff v. LaPaille* (2022) 80 Cal.App.5th 427.) The California Supreme Court granted review on the issues of liquidated damages under section 1194.2 and administrative penalties under section 248.5, and reversed and remanded to this court for further proceedings consistent with its opinion. (*Iloff v. LaPaille* (2025) 18 Cal.5th 551, 558, 575 (*Iloff*).)

Accordingly, we now conclude as follows. The trial court miscalculated the statute of limitations to undervalue its award of unpaid wages, and erred in declining to impose personal liability on LaPaille. It did not abuse its discretion in denying Iloff's UCL claims. The court also erred in declining to award liquidated damages under section 1194.2, denying administrative penalties under section 248.5, and miscalculating the waiting time penalties under section 203.

## I. BACKGROUND

Iloff lived and worked on property owned by BPI. LaPaille served as chief executive officer and chief financial officer of BPI, and managed that property during the relevant period. Iloff requested free rent if he kept the water system running, and provided maintenance and handyman services. Iloff performed various tasks for BPI between 2009 and 2016, and LaPaille provided him instructions, directions, and approvals related to this

---

[2] Further undesignated statutory references are to the Labor Code.

work.  BPI subsequently terminated this arrangement, and conceded Iloff had not been paid for his work apart from receiving free rent.

Iloff filed DLSE form 1, entitled "Initial Report or Claim," with the Labor Commissioner (Initial Report or Claim) on January 31, 2017.  The form identified the employer, set forth wage information, and identified hours worked.  Iloff named LaPaille and BPI as his employer, and alleged he was owed $132,880 in unpaid wages.  He also checked the box claiming waiting time penalties under section 203.

Iloff executed a form entitled "Complaint" a few months later.  It sought $132,880 in unpaid wages and $4,200 in waiting time penalties, but also $107,520 in liquidated damages under section 1194.2.  After a hearing, the Labor Commissioner found Iloff was an employee entitled to recover unpaid wages, liquidated damages, penalties, and interest.  It further determined that LaPaille was personally liable for those amounts.

LaPaille and BPI appealed the Labor Commissioner's order in the superior court.  After a bench trial, the court found that Iloff was an employee of BPI.  The court concluded Iloff was entitled to unpaid minimum wages for five hours per week from July 1, 2014 to August 19, 2016 plus interest.  It also awarded him statutory damages for BPI's failure to provide a wage statement, travel expense reimbursements, and waiting time penalties under section 203.  The court, however, found that LaPaille was not personally liable for BPI's failure to pay wages.  It reasoned it had discretion under section 558.1 on whether to hold her individually liable, and declined to do so here on grounds of fairness because there was no evidence any party "knew, expected or understood" there was any obligation to pay Iloff wages during their arrangement.

3

The court declined to award liquidated damages under section 1194.2 upon finding BPI's failure to pay Iloff was in good faith and BPI had reasonable grounds to believe it was not violating the Labor Code. It also denied administrative penalties under section 248.5 because neither the Labor Commissioner nor the Attorney General were parties.

Judgment was entered for Iloff and against BPI on his wage claims in the amount of $16,341. Iloff appealed to this court and, as described *ante*, to the Supreme Court, which has since remanded the case to us for further proceedings. Following that remand, we requested supplemental briefing from the parties on any matters that had arisen since our previous decision in the cause, and any remaining arguments for further proceedings in this court regarding Iloff's entitlement to an award of liquidated damages under section 1194.2 or the trial court's consideration of Iloff's claim for administrative penalties under section 248.5. (Cal. Rules of Court, rule 8.200(b).) Both parties confirmed there were no such matters or arguments.

## II. DISCUSSION

Iloff raises six arguments in this appeal: (1) the trial court used the wrong date when calculating the statute of limitations for his unpaid wage claims; (2) the court abused its discretion in denying his UCL claims; (3) the court lacked discretion to excuse LaPaille from personal liability; (4) the court erred in concluding defendants established a good faith defense to liquidated damages under section 1194.2; (5) the court erred in denying administrative damages under section 248.5; and (6) the court failed to incorporate the rental value of Iloff's BPI housing when calculating waiting time penalties under section 203. We address each argument in turn.

4

### A. *Statute of Limitations*

Iloff contends the trial court erred by calculating the statute of limitations from the date he filed his Complaint with the Labor Commissioner, instead of the earlier date he filed his Initial Report or Claim form with the Labor Commissioner.

If an employer fails to pay wages in the amount, time or manner required by contract or by statute, an employee can, among other options, seek administrative relief by filing a wage claim with the Labor Commissioner pursuant to a special statutory scheme codified in sections 98 to 98.8. (*OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 121.) This is commonly known as the "Berman" hearing procedure, after the name of the legislation's sponsor. (*Ibid.*; *Cuadra v. Millan* (1998) 17 Cal.4th 855, 858 (*Cuadra*).) Iloff argues here that, pursuant to *Cuadra*, the filing of the Initial Report or Claim form initiates the Berman hearing procedure. Defendants disagree, arguing the Complaint initiates the process. We agree with Iloff.

Section 98, subdivision (a), authorizes the Labor Commissioner to "investigate employee complaints" and further states: "Within 30 days of the filing of the complaint, the Labor Commissioner shall notify the parties as to whether a hearing will be held, whether action will be taken in accordance with Section 98.3, or whether no further action will be taken on the complaint."

The California Code of Regulations expands upon this provision: "An employee complaint or claim for wages, penalties or other demand for compensation properly before the [DLSE] or the Labor Commissioner . . . under Labor Code Section 98(a) shall be initiated by the filing of a complaint on the form prescribed herein in any District Office of the [DLSE]." (Cal. Code Regs., tit. 8, § 13501.) It provides a sample complaint and specifies

5

"[t]he complaint contemplated by Labor Code Section 98 and filed with the [DLSE] shall be in writing and substantially in" that form. (*Id.*, § 13501.5.) The sample complaint requires the claimant to identify the scope of services, time of service, promised rate of compensation, and the amount of wages, penalties, and other compensation sought from the employer. (*Ibid.*)

Iloff's Initial Report or Claim form satisfies this definition of "complaint" in the California Code of Regulations. It contains "substantially" the same information as the form set forth therein, including employee and employer information, wage compensation, hours worked, and scope of wages, compensation, and penalties sought. (Cal. Code Regs., tit. 8, § 13501.5.)

Calculating the statute of limitations from the filing of Iloff's Initial Report or Claim is also in accord with California Supreme Court precedent and the purpose of the Berman hearing procedure. In *Cuadra*, the Court addressed whether the statute of limitations for wage claims under section 98 ran from the date of the hearing or the date plaintiffs filed their claims with the DLSE. (*Cuadra, supra*, 17 Cal.4th at p. 857.) The Court concluded the intent of section 98 "is best served" by "calculating backpay from the filing date of the claim itself." (*Cuadra*, at p. 867.) It affirmed the appellate court's calculation, inferring it started from the date on which the plaintiff filed her " 'Initial Report or Claim' (DLSE 1)." (*Id.* at pp. 863, fn. 9, 872.)

In so doing, the Supreme Court discussed a hypothetical and noted if the statute of limitations period ran instead from the hearing date, a worker who invoked the Berman hearing procedure would receive 14 percent less wages than one who filed a civil lawsuit. (*Cuadra, supra*, 17 Cal.4th at p. 862.) The Court reached this conclusion by summing up (1) the 30 days between the filing of the Initial Report or Claim and the settlement conference typically held by DLSE, (2) the 30 days between the filing of the

6

Complaint (post-settlement) and the notification of the parties as to whether the Labor Commissioner would hold a hearing, and (3) the 90 days within which to hold that hearing. (*Id.* at pp. 861–862.) The Court's inclusion of this first 30-day period further clarifies its determination that the Initial Report or Claim triggers the statute of limitations. (*Ibid.*)

Finally, we note the Berman hearing procedure is designed to "provide 'an accessible, informal, and affordable' avenue for employees to seek resolution, with assistance available if necessary." (*OTO, L.L.C. v. Kho*, *supra*, 8 Cal.5th at p. 123.) Highly technical requirements, such as requiring a wage claimant to file the Complaint in lieu of the Initial Report or Claim to halt the running of the statute of limitations—especially when the Labor Commissioner instructs employees to file the Initial Report or Claim to initiate the Berman hearing process—runs counter to the goal of an accessible forum. (*Ibid.*)

In sum, we conclude the trial court erred in miscalculating the statute of limitations for Iloff's unpaid wage claims. It should have calculated the statute of limitations from the date he filed his Initial Report or Claim, which the record indicates was January 31, 2017.

## B.     *Unfair Competition Law Claims*

Iloff argues the trial court abused its discretion in denying him relief under the UCL. He contends the court failed to fully consider the equities in denying relief, such as the length of BPI's labor law violations in this matter and the lack of remedy available to "capture" recovery for an additional year of his employment period.

As Iloff acknowledges, relief under the UCL is "purely equitable" and "determination of the appropriate remedy is left to the sound discretion of the trial court in the exercise of that court's power to grant equitable relief."

7

(*Cortez v. Purolator Air Filtration Products Co.* (2000) 23 Cal.4th 163, 179.) The court's discretion is "very broad" in considering "the equities on both sides of a dispute." (*Id.* at p. 180.)

Here, the trial court concluded the equities on both sides "weigh in favor of not awarding additional relief" under the UCL. In so doing, it considered the "fundamental polices behind the Labor Code's requirement for prompt payment of wages," to ensure that employees are " 'paid in full' " and employers are penalized when they " 'fail to live up to their obligations.' " The court then explained a preponderance of the evidence established that neither party knew, expected, or understood there was any obligation to pay Iloff wages.

While Iloff believes the court should have focused on other factors, we have no occasion to replace the trial court's assessment of the equities with our own. (*People ex rel. Harris v. Aguayo* (2017) 11 Cal.App.5th 1150, 1160 ["Where ' "there is a [legal] basis for the trial court's ruling and it is supported by the evidence, a reviewing court will not substitute its opinion for that of the trial court" ' "].) Based on this record, we cannot conclude the trial court abused its discretion in denying Iloff relief under the UCL.

## C.     *LaPaille's Individual Liability*

Iloff argues the trial court erred in finding LaPaille was not personally liable for BPI's failure to pay wages. He contends the court lacked any discretion to do so under section 558.1. Section 558.1 was added to the Labor Code by Senate Bill No. 588 (2015–2016 Reg. Sess.) (Senate Bill 588), effective January 1, 2016. (Stats. 2015, ch. 803, § 10.) Section 558.1, subdivision (a), provides, in relevant part, that a "person acting on behalf of an employer, who violates, or causes to be violated, any provision regulating minimum wages . . . may be held liable as the employer for such violation."

8

Defendants' response is multifaceted. They first argue section 558.1 does not provide a private right of action for Iloff to hold LaPaille individually liable. Even if a private right of action exists, defendants argue the trial court had discretion under section 558.1 to find LaPaille was not personally liable. And finally, even if the court lacked such discretion, they argue section 558.1 does not operative retroactively to apply to the entire period of Iloff's wage claims.

1.      **Private Right of Action**

We begin with the question of whether section 558.1 allows for a private right of action. Defendants argue it does not because a private right of action is not explicitly provided in the statutory language, and the statute is instead part of a " 'comprehensive scheme for enforcement by an administrative agency' " as the exclusive remedy.

"A violation of a state statute does not necessarily give rise to a private cause of action." (*Lu v. Hawaiian Gardens Casino, Inc.* (2010) 50 Cal.4th 592, 596.) "Instead, whether a party has a right to sue depends on whether the Legislature has 'manifested an intent to create such a private cause of action' under the statute." (*Ibid.*) Here, the explicit language of section 558.1 does not identify the mechanism(s) for imposing liability on employers and persons acting on behalf of an employer. But despite defendants' position to the contrary, we conclude the statutory scheme does not evidence an intent by the Legislature to create an *exclusive* administrative remedy under section 558.1.

While the Labor Commissioner is empowered to enforce California's labor laws, the Legislature has also provided a private right of action for California employees to vindicate unpaid wages. (See § 1194, subd. (a).) Section 1194, subdivision (a), provides "any employee receiving less than the

9

legal minimum wage" is "entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit." It makes little sense for the Legislature to authorize the Labor Commissioner to enforce actions against individuals, but bar such recovery for employees simply because they may opt to pursue a civil action. Moreover, even if employees pursue relief through agency action—i.e., by initiating the Berman hearing process—employers are automatically entitled to appeal any agency decision to the superior court. (§ 98.2, subd. (a).) Under defendants' proffered interpretation, such an appeal would void the employee's ability to pursue relief against an individual and allow that individual to avoid personal liability. This contradicts the plain language of section 558.1, subdivision (a), which provides that a "person acting on behalf of an employer, who violates, or causes to be violated, any provision regulating minimum wages . . . may be held liable as the employer for such violation."

Individual liability that is, in effect, unenforceable could not have been the Legislature's intent. "[W]e are careful to uphold our duty to 'harmonize and reconcile [potentially conflicting statutory provisions] so as to carry out the overriding legislative purpose of the statutory scheme as a whole.' " (*Gutierrez v. Brand Energy Services of Cal., Inc.* (2020) 50 Cal.App.5th 786, 803.) " 'State wage and hour laws "reflect the strong public policy favoring protection of workers' general welfare and 'society's interest in a stable job market.' " ' " (*Ibid.*) "For this reason, ' "the statutory provisions are to be liberally construed with an eye to promoting such protection." ' " (*Ibid.*)

10

The legislative history of section 558.1 further supports our interpretation.[3] (*Lu v. Hawaiian Gardens Casino, Inc.*, *supra*, 50 Cal.4th at p. 597 [if a statute "does not contain such obvious language, resort to its legislative history is next in order"].) As a preliminary matter, section 558.1 is the only one of 13 statutory provisions amended or added by Senate Bill 588 that does not explicitly reference the powers of the Labor Commissioner as the mechanism for enforcement of the provision. (E.g., §§ 238.1, subd. (a) ["Labor Commissioner may issue and serve on that employer a stop order prohibiting the use of employee labor"]; 238.2, subd. (a) [["Labor Commissioner may create a lien on any real property in California of an employer"], 238.3, subd. (a) ["Labor Commissioner may create a lien on any personal property in California of an employer"].)

Defendants suggest this difference is a "mere oversight." We disagree. The Legislature's omission of certain language, along with its inclusion in other statutes enacted as part of the same bill, suggests the omission was intentional. (See *People v. Trevino* (2001) 26 Cal.4th 237, 242 ["When the Legislature uses materially different language in statutory provisions addressing the same subject or related subjects, the normal inference is that the Legislature intended a difference in meaning"].) It does not support defendants' position that section 558.1 enforcement is limited to actions by the Labor Commissioner.

[3] We grant Iloff's unopposed request for judicial notice filed on November 8, 2021 and subsequently amended on November 24, 2021. This request sought judicial notice of legislative materials from Senate Bill 588 and two related bills. (Evid. Code, §§ 452, subds. (a) & (c), 459, subd. (a).) We also grant Iloff's second unopposed request filed on February 9, 2022, for judicial notice of DLSE Web sites entitled "Policies and Procedures for Wage Claim Processing" and "How to File a Wage Claim," and DLSE form 1, entitled "Initial Report or Claim." (*Id.*, §§ 452, subd. (h), 459, subd. (a).)

11

Moreover, the legislative history of section 558.1 demonstrates the Legislature was concerned with addressing "wage theft," noting only a small percentage of employees who prevailed in their wage claims were actually able to recover unpaid wages and, even then, only a small percentage of the amount owed. (Sen. Rules Com., Off. of Sen. Floor Analyses of Sen. Bill 588, as amended Sept. 4, 2015, p. 8.) The Legislature thus enacted various provisions to discourage employers from defaulting on such judgments, primarily by "updat[ing] and improv[ing]" the Labor Commissioner's collection methods. (Sen. Com. on Judiciary, Analysis of Sen. Bill 588, as amended Apr. 20, 2015, p. 12.) The California Senate Committee analysis explained that the bill "gives the Labor Commissioner the authority to hold individual business owners accountable for their debts to workers. This will discourage business owners from rolling up their operations and walking away from their debts to workers and starting a new company." (Cal. Sen. Com., 3d reading analysis of Sen. Bill 588, as amended Sept. 4, 2015, p. 4.) Section 558.1 achieved these goals by (1) allowing employees to hold certain individuals liable for wage violations; and (2) empowering the Labor Commissioner to assist employees in collecting on the resulting judgments, including against liable individuals.

For all the reasons above, we interpret section 558.1 as allowing for a private right of action.[4]

---

[4] While not binding on this court, we note at least three district courts have also interpreted section 558.1 as allowing for a private right of action. (See, e.g., *Roush v. MSI Inventory Service Corp.* (E.D.Cal., July 30, 2018, No. 2:17-cv-1010-JAM-KJN) 2018 U.S.Dist. Lexis 127273, at pp. *5–*7; *Carter v. Rasier-Ca, LLC* (N.D.Cal., Sept. 15, 2017, No. 17-cv-00003-HSG) 2017 U.S.Dist. Lexis 150349, at p. *16, fn. 1; *McClain v. PQ Beverly Hills, Inc.* (C.D.Cal., Jan. 13, 2017, No. 2:16-cv-8616-CAS(AJWx)) 2017 U.S. Dist. Lexis 6321, at pp. *12–13.)

## 2.    Discretion

We turn next to the question of whether section 558.1 gives courts discretion to impose individual liability.  As stated *ante*, section 558.1, subdivision (a), provides that a person acting on behalf of an employer, who violates, or causes to be violated, any provision regulating minimum wages "may" be held liable as the employer for such violation.  The parties agree the word "may" implies a measure of discretion, but disagree about whether the statute grants the exercise of that discretion to the party prosecuting the action or to the court.

" ' " 'As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose.' " ' " (*People v. Gonzalez* (2017) 2 Cal.5th 1138, 1141.)  " ' " 'We begin by examining the statute's words, giving them a plain and commonsense meaning.' " ' " (*Ibid.*)  " '[W]e consider the language of the entire scheme and related statutes, harmonizing the terms when possible.' " (*Ibid.*)  If the language of the statute is clear and unambiguous, there is no need for judicial construction and our task is at an end.  (*Even Zohar Construction & Remodeling, Inc. v. Bellaire Townhouses, LLC* (2015) 61 Cal.4th 830, 838.)  But if the language is reasonably susceptible of more than one meaning, we may examine extrinsic aids such as the apparent purpose of the statute, the legislative history, the canons of statutory construction, and public policy.  (*Ibid.*)

We begin with the plain language of section 558.1 and the word "may" in the statute.  In this analysis, *Jones v. Tracy School District* (1980) 27 Cal.3d 99 (*Jones*) is instructive.  *Jones* involved the interpretation of section 1197.5, former subdivision (g), now subdivision (h), which provides employees receiving less than their entitled wage " 'may' " recover in a civil

action the balance of such wages, including interest, plus costs of suit and attorney fees. (*Jones*, at p. 109; Stats. 2016, ch. 866, § 1.) The parties disagreed as to whether the trial court had discretion to deny attorney fees based on the word "may" in the statutory provision. (*Jones*, at p. 109.) There, the Supreme Court construed the word "may" as "not directed to the trial court, but to the complaining party." (*Ibid*.) Aggrieved employees had three alternative remedies under the statute: file a complaint with the DLSE, allow DLSE to bring a civil action on their behalf, or file a civil action themselves. (*Ibid*.) The Court thus concluded that "use of the word 'may' does not demonstrate an intent to give the trial court discretion to award attorney's fees, but merely establishes the plaintiff's *right* to such an award should [the plaintiff] elect to pursue the civil remedy." (*Id*. at p. 110.)

We find a similar interpretation of the word "may" is appropriate for section 558.1 here. In the event an employer attempts to avoid a judgment arising from a wage violation, the employee or the Labor Commissioner is entitled to enforce such liability against those individuals who "violate[], or cause[] to be violated" the minimum wage laws. (§ 558.1, subd. (a).) But pursuing such liability may not be necessary if the employee is able to collect unpaid wages from the employer.

This interpretation is in accord with the legislative history of section 558.1. The Legislative Counsel's Digest of Senate Bill 588 explained the provision "authorized" employers or other persons satisfying the statutory definition to be held liable for the violations. And by imposing such liability, the Legislature sought to "target[] individual officers who are involved in the failure to pay wages" and " 'discourage [such individuals] from rolling up their operations and walking away from their debts to workers and starting a new company.' " (*Voris v. Lampert* (2019) 7 Cal.5th 1141, 1161 & fn. 15,

14

quoting Assem. Com. on Labor & Employment, Analysis of Sen. Bill 588, as amended July 1, 2015, p. 6.) Allowing courts to excuse individual liability would undermine the purposes of section 558.1.

Defendants' reliance on *Usher v. White* (2021) 64 Cal.App.5th 883 does not alter our view. In that case, the appellate court addressed a different issue: when an owner could be deemed to have "caused" a Labor Code violation for liability under section 558.1. (*Usher*, at pp. 886, 888.) The court concluded that, based on an examination of the particular facts and not any bright line rule, the owner must either have been personally involved in the purported violation or "had sufficient participation in the activities of the employer, including, for example, over those responsible for the alleged wage and hour violations, such that the 'owner' may be deemed to have contributed to, and thus for purposes of this statute, 'cause[d]' a violation." (*Id.*, at pp. 896–897.) While *Usher* is useful to evaluate whether an individual satisfies the causal element of section 558.1, it does not address the issue of discretion presented here.

Based on the foregoing, we interpret the word "may" in section 558.1 as reflecting a recognition by the Legislature that the party prosecuting the wage violation may not need to pursue liability in the event the employer satisfies any outstanding judgment. It does not grant *judicial* discretion in imposing liability. The trial court erred in concluding otherwise.

Defendants do not present any argument otherwise challenging the imposition of individual liability on LaPaille as a person "acting on behalf of an employer" who "violates, or causes to be violated," any provision regulating minimum wages. (§ 558.1, subd. (a).) The trial court found LaPaille was BPI's property manager during the relevant time and was in "constant contact" with Iloff, providing him "instructions, directions and

15

approvals for commencing and completing the work [he] performed." Accordingly, we conclude the trial court erred in finding LaPaille was not personally liable for the wage violations under section 558.1.

### 3. Retroactivity

Finally, we address defendants' contention that even if there is some individual liability for LaPaille under section 558.1, it can only extend back to January 1, 2016 (when the statute became effective) because section 558.1 does not operate retroactively. This would exclude the majority of unpaid wages awarded to Iloff, which were based on a period from July 1, 2014 to August 19, 2016.

Iloff does not argue that section 558.1 is retroactive. And we see no basis for any such argument, as there is no "express declaration" or "clear indication" that the Legislature intended section 558.1 to apply retroactively. (*Tapia v. Superior Court* (1991) 53 Cal.3d 282, 287 (*Tapia*).)

Instead, Iloff appears to argue that an earlier statute had already created individual liability for underpaid wages, and thus section 558.1 is a procedural law that can be applied prospectively to liability that existed before its enactment. Defendants do not offer a response to this argument and thus forfeited the issue. (*Sciarratta v. U.S. Bank Nat. Assn.* (2016) 247 Cal.App.4th 552, 560, fn. 6; see Cal. Rules of Court, rule 8.204(a)(1)(B) [each brief must state each point under separate heading or subheading and, if possible, citation of authority].)

We agree with Iloff that individual liability for underpaid wages existed prior to the enactment of section 558.1. Effective January 1, 2012, section 1197.1, subdivision (a) (section 1197.1(a)) was amended to provide that an employer or person acting either individually or as an officer, agent, or employee, and who pays or causes to be paid to any employee less than the

16

minimum wage, be subject to not only a civil penalty but also "restitution of wages payable to the employee." (Stats. 2011, ch. 655, § 9.)

Given this individual liability under section 1197.1(a), we also agree with Iloff that section 558.1 served as a "procedural" statute, creating a new method of enforcement by allowing a private right of action. (Cf. *Atempa v. Pedrazzani* (2018) 27 Cal.App.5th 809, 826 [concluding section 1197.1(a) only authorizes recovery by the Labor Commissioner].)

"A law governing procedure to be followed in the future still operates prospectively, even when it relates to facts existing before its enactment." (*People v. Miller* (2018) 23 Cal.App.5th 973, 980–981, citing *Tapia, supra*, 53 Cal.3d at p. 288.) Procedural statutes are " ' "prospective in nature" ' " because they relate to the procedure to be followed in the future. (*Tapia*, at p. 288.) "New procedural or remedial laws are consistently applied to cases not yet final when they become effective, unless the Legislature expresses an intent [not] to so apply them." (*City of Clovis v. County of Fresno* (2014) 222 Cal.App.4th 1469, 1484 (*Clovis*).)

In *Clovis*, for example, the parties disagreed about the calculation of a fee the county withheld for the service of collecting property taxes. (*Clovis, supra*, 222 Cal.App.4th at p. 1472.) The trial court ordered the county to apply a different methodology for calculating the fee, repay amounts owed to the plaintiffs, and pay interest. (*Id*. at p. 1473.) On appeal, the county challenged the award of interest based on then-recent statutes that altered the applicable interest rates. (*Ibid*.) In concluding the new interest rates should be applied to the judgment, the appellate court noted interest, albeit at a different rate, was already awardable under prior law. (*Id*. at pp. 1473, 1478.) It explained application of the new interest rate statute was "*deemed not to be retroactive*" because "the change in the law affects only the conduct

17

of the litigation and the provision of a remedy going forward, not the rights and duties of the parties in the past." (*Id.* at p. 1484.)

As with the statutes in *Clovis*, section 558.1 did not impact any substantive rights or duties, nor did it create any new substantive causes of action. (*Clovis*, *supra*, 222 Cal.App.4th at pp. 1483–1484.) Instead, section 558.1 added a new procedural method of enforcement by allowing an employee to enforce liability rather than relying on the Labor Commissioner to do so. (See Sen. Com. on Judiciary, Analysis of Sen. Bill 588, as amended Apr. 20, 2015, p. 15 [discussing updated methods of enforcement].) Accordingly, to the extent LaPaille is individually liable for underpaid wages pursuant to section 588.1, we conclude such liability extends back to the enactment of section 1197.1.

## D.    *Liquidated Damages Under Section 1194.2*

Iloff argues the trial court erred in declining to award liquidated damages under section 1194.2. The court did so based upon its finding that BPI's failure to adequately pay Iloff was in good faith as no evidence showed that either party understood, expected, or believed he was to be paid wages. Iloff, however, contends that defendants failed to establish good faith under section 1194.2 because they did not show they had made any attempt to determine what the law required, and ignorance of the law is insufficient to establish the defense.

Section 1194.2, subdivision (a), provides that, where a court finds an employee is entitled to unpaid minimum wages, the employee "shall be entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon." Subdivision (b) of the same section, however, sets forth a good faith defense to this otherwise mandatory award. If an employer demonstrates the act or omission was "in good faith" and the

18

employer had "reasonable grounds for believing that the act or omission was not a violation," the court "may, as a matter of discretion, refuse to award liquidated damages or award any amount of liquidated damages not exceeding the amount specified in subdivision (a)." (§ 1194.2, subd. (b).)

The California Supreme Court has now interpreted the good faith defense in section 1194.2 to require an employer to show it made a reasonable attempt to determine the requirements of the law governing minimum wages. (*Iloff, supra*, 18 Cal.5th at p. 558.) To reach this conclusion, the Court considered the statutory context, pointing to the preceding section 1194, subdivision (a) for recovery of unpaid minimum wages by any employee " '[n]otwithstanding any agreement to work for a lesser wage.' " (*Iloff*, at p. 562.) Reading that language with section 1194, subdivision (a)'s default rule mandating an award of liquidated damages for minimum wage violations, the Court explained: "this language suggests that the Legislature intended for employers to be liable for liquidated damages even when their employees have agreed to work for less than the minimum wage. It would be contrary to this apparent intent to read the good faith defense provision as allowing courts to relieve an employer of liability for liquidated damages without showing that it had made a reasonable attempt to determine the requirements of the law governing minimum wages and a good faith effort to comply with it." (*Iloff*, at p. 562.)

The Court also explained its interpretation was consistent with the legislative history. (*Iloff, supra*, 18 Cal.5th at pp. 562–563.) In enacting section 1194.2, the Legislature "sought to promote more effective enforcement of minimum wage laws by the state and by employees themselves," and "considered the liquidated damages provision a needed 'disincentive[] to [the] violation of minimum wage laws' and a tool for promoting private

19

enforcement." (*Iloff*, at p. 562.)  It would be contrary to these purposes to permit an employer to evade liquidated damages by merely showing ignorance of the law.  (*Id.* at p. 563.)

Moreover, the legislative history reflects that the good faith defense provision in section 1194.2 was modeled on a similar provision in the Fair Labor Standards Act (29 U.S.C. § 201 et seq.) (FLSA), and federal courts had precluded employers from showing a good faith defense under the FLSA based on ignorance of the law long before the enactment of section 1194.2. (*Iloff*, *supra*, 18 Cal.5th at p. 563, citing *Sinclair v. Automobile Club of Oklahoma, Inc.* (10th Cir. 1984) 733 F.2d 726, 730; *Marshall v. Brunner* (3d Cir. 1982) 668 F.2d 748, 753; *Barcellona v. Tiffany English Pub, Inc.* (5th Cir. 1979) 597 F.2d 464, 468–469; *Williams v. Tri-County Growers, Inc.* (3d Cir. 1984) 747 F.2d 121, 129.)  And since the enactment of section 1194.2, federal courts "have continued to interpret the FLSA good faith defense provision to require the employer to demonstrate that it took 'active steps to ascertain the dictates of the FLSA' and 'act[ed] to comply with them.' " (*Iloff*, at p. 564, quoting *Herman v. RSR Security Services Ltd.* (2d Cir. 1999) 172 F.3d 132, 142.)

The Court thus held that, to establish a good faith defense under section 1194.2, an employer must show it made a reasonable attempt to determine the requirements of the law governing minimum wages.  (*Iloff*, *supra*, 18 Cal.5th at p. 568.)  In so doing, it noted that "what constitutes a reasonable attempt will vary by context." (*Id.* at p. 567.)  "When an employer has made a reasonable attempt to determine the requirements of the law governing minimum wages, a court may consider evidence of the nature of the parties' relationship, their agreements with each other, and the legal

landscape in determining whether the employer made a good faith effort to comply with those requirements." (*Id*. at p. 566.)

But here, the Court explained, the "determination is straightforward because the employers do not claim to have made *any* attempt to determine the requirements of the law governing compensation for Iloff's services to their business. The trial court's findings that the employers and Iloff intended and expected that Iloff would perform his services in exchange for free rent and that he would not be paid wages or treated as an employee are legally insufficient to support a good faith defense to liquidated damages. These findings establish that the employers did not understand that they were required to pay Iloff the minimum wage, but 'ignorance alone' does not prove good faith." (*Iloff*, *supra*, 18 Cal.5th at pp. 567–568.) "Iloff is entitled to an award of liquidated damages." (*Id*. at p. 568.)

Accordingly, we conclude the trial court erred in declining to award Iloff liquidated damages under section 1194.2.

## E.     *Administrative Penalties Under Section 248.5*

Iloff argues the trial court erred in denying administrative penalties under section 248.5 because neither the Labor Commissioner nor the Attorney General were parties.

The Healthy Workplaces, Healthy Families Act of 2014 (§ 245 et seq.) (Paid Sick Leave law) requires employers to provide paid sick leave to their employees. (*Hirdman v. Charter Communications, LLC* (2025) 113 Cal.App.5th 376, 382.) Section 248.5, subdivision (b)(3) (section 248.5(b)(3)) sets out an administrative penalty that "shall include a sum of fifty dollars ($50) for each day or portion thereof that the violation occurred or continued, not to exceed an aggregate penalty of four thousand dollars ($4,000)."

21

Iloff raised a claim for administrative penalties under section 248.5(b)(3) in his notice of claims filed in the superior court after defendants appealed the Labor Commissioner's ruling.  (*Iloff*, *supra*, 18 Cal.5th at p. 569 [in a Berman appeal, "the trial court may, in its 'sound discretion,' allow an employee to raise additional claims that the Labor Commissioner did not consider during the administrative stage of the Berman process"].)  Defendants do not dispute that Iloff was not provided paid sick leave here.  Instead, they respond that only the Labor Commissioner or Attorney General is authorized to enforce such administrative penalties under section 248.5.

The California Supreme Court, however, has interpreted section 248.5 "to also authorize employees to raise claims in court in response to an employer's appeal, as Iloff did here."  (*Iloff*, *supra*, 18 Cal.5th at p. 568.)  It again began with the statutory context, noting section 248.5 plainly "authorizes employees to raise claims before the Labor Commissioner."  (*Ibid.*, citing § 248.5, subd. (a) (§ 248.5(a)) [providing "Labor Commissioner shall enforce this article" and order appropriate temporary relief "pending the completion of a full investigation or hearing through the procedures set forth in Sections 98, 98.3, 98.7, 98.74, or 1197.1"]; § 248.5, subd. (b)(1) [authorizing Labor Commissioner to order any appropriate relief if it determines "in any administrative proceeding under subdivision (a)" that a violation has occurred].)  The Court explained:  "Read in context, section 248.5[(a)]'s reference to section 98 clearly indicates the Legislature's understanding that employees would raise Paid Sick Leave claims before the Labor Commissioner in the Berman process."  (*Iloff*, at p. 569.)

The Court interpreted this reference to section 98 to "suggest[] that the Legislature intended Berman appeals (provided for in section 98.2) to be available to parties prosecuting Paid Sick Leave law claims."  (*Iloff*, *supra*, 18

Cal.5th at p. 571.) It rejected any contrary interpretation based on section 98.2's lack of inclusion in the procedures explicitly listed in section 248.5(a). (*Iloff*, at p. 571.) The Court reasoned: "When the Labor Commissioner holds a Berman hearing under section 98, the parties are entitled to appeal the Labor Commissioner's ruling under section 98.2." (*Ibid.*) Accordingly, a "separate citation to section 98.2 in section 248.5[(a)] was not needed to provide that authority." (*Ibid.*) Moreover, the Court explained that a contrary interpretation could not be what the Legislature intended. Because the appeal of the Labor Commissioner's decision to the superior court nullifies the decision, an employer would be permitted to nullify the commissioner's Paid Sick Leave award simply by filing an appeal. (*Ibid.*)

The Court also explained that the language of section 248.5 and its statutory context shows "the Legislature contemplated that the Berman process would be among the avenues available for enforcing an employee's rights under the Paid Sick Leave law, alongside enforcement actions filed in court by the Labor Commissioner or the Attorney General." (*Iloff, supra*, 18 Cal.5th at p. 570.) The introductory provision of the Paid Sick Leave law specifies that its provisions are "in addition to and independent of any other rights, remedies, or procedures available under any other law." (§ 245, subd. (b).) Section 248.5 itself reiterates that the procedures provided under the Paid Sick Leave law are "cumulative." (§ 248.5, subd. (g).) The Court thus concluded that the reference to section 98 in section 248.5(a) "does not suggest that the Legislature intended to preclude an employee from raising a Paid Sick Leave law claim through a Berman appeal pursuant to section 98.2 — a 'procedure[ ] available under any other law.' " (*Iloff*, at p. 570.)

The Court then looked to the legislative history of section 248.5, seeing "no indication that the Legislature intended to preclude employees from

raising Paid Sick Leave law claims in Berman appeals." (*Iloff*, *supra*, 18 Cal.5th at p. 571.)  As originally enacted, section 248.5(a) had not included a list of procedures and thus "presumably contemplated that the Labor Commissioner would use procedures set out in separate, unspecified Labor Code sections, such as the procedures governing Berman hearings and appeals, to conduct the referenced 'full investigation or hearing.' " (*Iloff*, at p. 571.)  That list was added in 2020 in response to the COVID-19 pandemic, and the "limited discussion" of the amendment in its legislative history "reflects that the Legislature intended that the referenced 'full investigation or hearing' of a Paid Sick Leave law claim would be conducted under procedures set forth in existing law." (*Id.* at p. 572.)

The Court noted section 248.5 was enacted years after *Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1120, which construed section 98.2 as allowing trial courts the discretion to permit employees to raise additional claims in response to an employer's Berman appeal.  (*Iloff*, *supra*, 18 Cal.5th at p. 572.)  As the Court explained, "When considered against the backdrop of our decision in *Murphy*, the Legislature's inclusion of section 98 in the list of procedures by which the Labor Commissioner may enforce the Paid Sick Leave law suggests that the Legislature intended the full Berman process — including the opportunity to raise additional related claims on appeal — to be available to employees seeking to enforce their rights under the law." (*Id.* at p. 573.)  Omitting section 98.2 from the list of citations in section 248.5(a) "would be an exceedingly subtle way for the Legislature to indicate an intent to preclude employees from pursuing Paid Sick Leave law claims in Berman appeals, as would otherwise be their right under *Murphy*." (*Iloff*, at p. 573.)

Finally, the Court recognized the purpose of section 248.5 was "to promote the health, safety, and economic security of California employees, their families, and their communities," and its interpretation of the statute was consistent with "liberally construing the Labor Code to give effect to its worker-protective purposes." (*Iloff, supra*, 18 Cal.5th at p. 575.) "Particularly given the limited resources available for government enforcement of the Labor Code, depriving courts of the authority to allow Paid Sick Leave law claims in Berman appeals would contradict section 98's basic promise of providing employees with an expeditious and accessible method for resolving their claims — a method the Legislature intended to make available to employees whose rights under the Paid Sick Leave law had been violated." (*Id.* at pp. 574–575.)

Accordingly, the trial court erred in rejecting administrative penalties under section 248.5 because the Labor Commissioner and the Attorney General were not parties.

As for the amount of the administrative penalty under section 248.5, Iloff argues that he is entitled to the maximum $4,000 penalty. The trial court found Iloff was entitled to unpaid minimum wages for five hours per week from July 1, 2014 to August 19, 2016 plus interest. Iloff contends that the violation of his paid sick leave rights commenced on July 1, 2015, and continued through the date of his discharge on August 19, 2016. (Stats. 2014, ch. 317, § 3 [Paid Sick Leave law enacted, providing entitlement to paid sick days starting "on or after July 1, 2015"]; § 248.5(b)(3) [administrative penalty to include "a sum of fifty dollars ($50) for each day or portion thereof that the violation occurred or continued, not to exceed an aggregate penalty of four thousand dollars ($4,000)"].) Defendants do not offer any response to this argument. Any such responses are thus forfeited. (*Sciarratta v. U.S. Bank*

25

*Nat. Assn.*, *supra*, 247 Cal.App.4th at p. 560, fn. 6; see Cal. Rules of Court, rule 8.204(a)(1)(B).)

In sum, we conclude the trial court erred in declining to award Iloff administrative penalties under section 248.5.

**F.** **Waiting Time Penalties Under Section 203**

Iloff argues the trial court erred in calculating waiting time penalties under section 203 because it failed to include the value of his BPI housing in his daily rate of pay.

"Penalties under Labor Code section 203 are properly awarded when an employer 'willfully fails to pay' an employee all wages owed at the times specified in Labor Code section 201, for discharged employees." (*Gonzalez v. Downtown LA Motors, LP* (2013) 215 Cal.App.4th 36, 54.) Section 203 specifies that "the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days." (*Id.*, subd. (a).) "This provision has been interpreted to mean the penalty is an amount 'equal to the employee's daily wages for each day . . . that the wages are unpaid.' " (*Nishiki v. Danko Meredith, P.C.* (2018) 25 Cal.App.5th 883, 893.)

Section 200 provides a definition of the term "[w]ages" as used in the article, including "all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation." (*Id.*, subd. (a).) "Courts have recognized that 'wages' also include those benefits to which an employee is entitled as a part of his or her compensation, including money, room, board, clothing, vacation pay, and sick pay." (*Murphy v. Kenneth Cole Productions, Inc.*, *supra*, 40 Cal.4th at p. 1103, citing *Suastez v.*

26

*Plastic Dress-Up Co.* (1982) 31 Cal.3d 774, 780; *Department of Industrial Relations v. UI Video Stores, Inc.* (1997) 55 Cal.App.4th 1084, 1091.)

Here, it is undisputed that rent was provided to Iloff as compensation for his work. We thus conclude the trial court erred in calculating waiting time penalties under section 203. It should have incorporated rent into its calculation of Iloff's daily wages. And as Iloff notes, this daily rate (incorporating rent) could vary depending on how the weekly hours are spread throughout the week. The trial court's ruling did not specify that spread, awarding Iloff unpaid minimum wages for five hours per week from July 1, 2014 to August 19, 2016. Accordingly, we remand to the trial court to calculate the section 203 waiting time penalties, with a daily rate incorporating rent, in the first instance.

## III. DISPOSITION

The judgment is reversed as to the calculation of unpaid wages, the denial of individual liability as to defendant Cynthia LaPaille, the denial of liquidated damages under section 1194.2, the denial of administrative penalties under section 248.5, and the calculation of waiting time penalties under section 203. The judgment is affirmed in all other respects. We remand the matter to the trial court to recalculate the unpaid wages and waiting time penalties in accordance with this opinion. The parties are to bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(3).)

_____

Smiley, J.


WE CONCUR:



_____

Humes, P.J.




_____

Banke, J.


*Iloff v. LaPaille*  A163504

Trial Court:

Superior Court of Humboldt County

Trial Judge:

Hon. Timothy A. Canning

Counsel:

Department of Labor Relations, Division of Labor Standards Enforcement, David M. Balter for Plaintiff and Appellant.

Janssen Malloy, Amelia F. Burrough, William H. Stein for Defendants and Respondents.

*Iloff v. LaPaille*  A163504